UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

Susan E. Karnes

                          Plaintiff,                    05-CV-6328

                 v.                          **DECISION
and ORDER**

MICHAEL J. ASTRUE,[1] Commissioner
of Social Security

                         Defendant.

_____

## Introduction

Plaintiff Susan E. Karnes ("Plaintiff") brings this action pursuant to the Social Security Act § 216(I) and § 223, seeking review of a final decision of the Commissioner of Social Security ("Commissioner"), denying his application for Disability Insurance Benefits.[2] Specifically, Plaintiff alleges that the decision of Administrative Law Judge ("ALJ") George C. Yatron, as affirmed by the Social Security Appeals Council ("Council"), denying her application for benefits was against the weight of substantial evidence contained in the record and was contrary to applicable legal standards.

The Plaintiff moves for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c) ("Rule 12(c)"), seeking reversal of the

---

[1] Michael J. Astrue became the Commissioner of Social Security on February 12, 2007. Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Michael J. Astrue is substituted for his predecessor Commissioner JoAnne B. Barnhart as the proper defendant in this suit.

[2] This case was transferred to the undersigned by the Honorable David G. Larimer, Judge, United States District Court for the Western District of New York by Order dated January 10, 2008.

Commissioner's ruling or, in the alternative, remand of the matter for a new hearing.  The Commissioner cross-moves for judgment on the pleadings pursuant to Rule 12(c), on grounds that the ALJ's decision was supported by substantial evidence contained in the record and was based on the correct application of appropriate legal standards. For the reasons set forth below, I find that the decision of the Commissioner is supported by substantial evidence, and is in accordance with applicable law. I therefore grant the Commissioner's cross-motion for judgment on the pleadings, and deny Plaintiff's motion for judgment on the pleadings.

## **Background**

On August 23, 2002, Plaintiff, who was then 37 years old, filed an application for Disability Insurance Benefits under Title II,  § 216(I) and § 223 of the Social Security Act ("the Act") claiming a disability since March 28, 2002, due to degenerative disc disease.  (Transcript of the Administrative Proceedings at pages 42) (hereinafter "Tr."). Plaintiff's application was denied by the Social Security Administration initially on November 8, 2002. (Tr. at 32-36). Plaintiff filed a timely request for hearing on December 10, 2002. (Tr. at 37).

Thereafter, Plaintiff appeared with counsel at an administrative hearing before the ALJ on June 23, 2004. (Tr. at 168). In a decision dated July 26, 2004, the ALJ determined that Plaintiff was not disabled. (Tr. at 26-31).  Plaintiff filed a

timely request for a review of the hearing decision on September 15. (Tr. at 13).

The Council granted a request for review of the ALJ's decision on December 28, 2004. (Tr. at 156). In a decision dated May 2, 2005, the Council determined that Plaintiff was not disabled and adopted the findings and conclusions of the ALJ. (Tr. at 6-11). The Council's decision became the final decision of the Commissioner. On June 21, 2005, Plaintiff filed this action.

## Discussion

### I.   Jurisdiction and Scope of Review

42 U.S.C. § 405(g) grants jurisdiction to district courts to hear claims based on the denial of Social Security benefits. Mathews v. Eldridge, 424 U.S. 319, 320 (1976). Additionally, the section directs that when considering such a claim, the Court must accept the Commissioner's findings of fact if those findings are supported by substantial evidence in the record. Substantial evidence is defined as, "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Consolidated Edison Co. v. NLRB, 305 U.S. 197, 217 (1938). Section 405(g) thus limits the Court's scope of review to determining whether or not the Commissioner's findings were supported by substantial evidence. See Mongeur v. Heckler, 722 F.2d 1033, 1038 (2d Cir. 1983) (finding that a reviewing Court does not try a benefits case de novo). The Court is also authorized to review the

legal standards employed by the Commissioner in evaluating Plaintiff's claim.

The Court must "scrutinize the record in its entirety to determine the reasonableness of the decision reached." Lynn v. Schweiker, 565 F. Supp. 265, 267 (S.D. Tex. 1983) (citation omitted). The Commissioner asserts that his decision was reasonable and is supported by the evidence in the record, and moves for judgment on the pleadings pursuant to Rule 12(c). Judgment on the pleadings may be granted under Rule 12(c) where the material facts are undisputed and where judgment on the merits is possible merely by considering the contents of the pleadings. Sellers v. M.C. Floor Crafters, Inc., 842 F.2d 639 (2d Cir. 1988). If, after a review of the pleadings, the Court is convinced that Plaintiff can prove no set of facts in support of his claim which would entitle him to relief, judgment on the pleadings may be appropriate. See Conley v. Gibson, 355 U.S. 41, 45-46 (1957).

## II.  **The Commissioner's decision to deny Plaintiff benefits was supported by substantial evidence in the record**

The Council adopted the findings and conclusions of the ALJ to find that Plaintiff was not disabled within the meaning of the Act. (Tr. at 10). In doing so, the Council and ALJ adhered to the Social Security Administration's five-step sequential evaluation analysis for evaluating applications for disability benefits. See 20 C.F.R.

§ 404.1520.[3] Under step one of the process, the Council agreed with the ALJ's finding that the Plaintiff had not engaged in substantial gainful activity since her alleged onset of disability. (Transcript of Administrative Proceedings at pages 7, 30) (hereinafter "Tr.").

At Steps 2 and 3, the Council agreed with the ALJ's conclusion that Plaintiff has severe impairments that do not meet or equal in severity an impairment listed in Appendix 1, Subpart P, Regulations No. 4. (Listing 1.02 (Musculoskeletal)) (Tr. at 7, 30).  The ALJ found the severe impairments to be mild degenerative disc disease at L5-S1, degenerative joint disease in left ankle, and obesity. (Tr. at 7, 30).

Further, the Council agreed with the ALJ's finding that Plaintiff is capable of performing her past relevant work.  (Tr. at 7, 30). The Council agreed with the ALJ  that Plaintiff is able to occasionally lift and/or carry 20 pounds, frequently lift and/or carry 10 pounds, stand and/or walk for 6 hours in an 8 hour work day, sit for 6 hours or more in an 8 hour work day, has had no push/pull limitations other than as shown for lift and/or carry, and is able to perform light work. (Tr. at 30). The Plaintiff's

---

[3]Pursuant to the five-step analysis set forth in the regulations, the ALJ, when necessary will: (1) consider whether the claimant is currently engaged in substantial gainful activity; (2) consider whether the claimant has any severe impairment or combination of impairments which significantly limit his physical or mental ability to do basic work activities; (3) determine, based solely on medical evidence, whether the claimant has any impairment or impairments listed in Appendix 1 of the Social Security Regulations; (4) determine whether or not the claimant maintains the residual functional capacity to perform his past work; and (5) determine whether the claimant can perform other work. See id.

ability does not preclude the performance of her past relevant work as a plastic production worker, as she previously performed the job. (Tr. at 10, 30).

Based on the entire record, including the medical evidence in the record, I find that the ALJ and the Council properly concluded that Plaintiff was not disabled within the meaning of the Act.

A. <u>The ALJ properly rejected the treating physicians' statements concerning Plaintiff's ability to work.</u>

The Plaintiff contends that the ALJ improperly discounted the statements of Dr. Agostinelli and physicians at Northgate Medical Group that Plaintiff is "unable to work due to her back pain, left foot pain. . . and inability to stand for any length of time as well as difficulties with walking, lying down, etc." (Pl. Br. at 4). I find that the ALJ properly rejected the statements of Dr. Agostinelli and physicians at Northgate Medical Group that Plaintiff is unable to work. The treating physician's statement that an individual is disabled or unable to work does not mean that the ALJ is required to determine her to be disabled within the meaning of the Act. That issue is reserved for the Commissioner and, therefore the treating physician's opinion on disability is never entitled to controlling weight or any special significance. 20 C.F.R. §§ 404.1527(e); SSR 96-5p. <u>Snell v. Apfel</u>, 177 F.3d 128, 133 (2d Cir. 1999). The Social Security Administration considers the statements of the treating physicians but makes its own determination as to disability. <u>See</u> <u>id</u>.

B.    <u>The ALJ omitted the "treating physician rule" analysis.</u>

The Commissioner of Social Security has the authority to regulate the nature, extent and manner of taking and furnishing evidence in order to establish the right to Social Security disability benefits.  42 U.S.C. 405(a). In accordance with this authority, the Social Security Administration has chosen to give evidentiary weight to the opinion of treating physicians in disability cases. 20 C.F.R. 404.1527 (d)(2). When an ALJ does not give controlling weight to a treating physician's opinion, the ALJ must apply the following factors: "(I) the frequency of examination and the length, nature, and extent of the treatment relationship; (ii) the evidence in support of the opinion; (iii) the opinion's consistency with the record as a whole; (iv) whether the opinion is from a specialist; and (v) other relevant factors." <u>Schaal v. Apfel</u>, 134 F.3d 496, 503 (2d Cir. 1998) (citing 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2)).

In this case, the ALJ's decision  did not address the opinions of Plaintiff's treating physicians at Northgate Medical Group as required by the "treating physician rule" analysis. (Tr. at 7). However, omission of the "treating physician rule" analysis does not always require remand for further proceedings when the treating physician's opinion is inconsistent with other substantial evidence in the record. <u>See</u> <u>Halloran v. Barnhart</u>, 362 F.3d 28, 31-32 (2d Cir. 2004). In this case, the Northgate Medical Group

physicians' opinions credit the Plaintiff's complaints of pain and conclude that Plaintiff is disabled.  However, I agree with the Council's conclusion that the Northgate Medical Group physicians' opinions that the claimant is disabled and unable to work are not supported by clinical and objective medical evidence. (Tr. at 9).

Plaintiff describes Dr. Agostinelli, a member of the Northgate Medical Group, as her primary physician. (Pl. Br. at 3). Treatment notes initialed by Dr. Agostinelli dated May 28, 2002 state that Plaintiff "remains disabled" and has severe back pain and tenderness in her LS spine area. (Tr. at 110). However, the notes also  state that Plaintiff's reflexes are symmetrical and equal. (Tr. at 110).

On July 24, 2002, Dr. Agostinelli again states that Plaintiff's reflexes are symmetrical and equal, and that "no other signs are noted." (Tr. at 109). In addition, he states that "Her pain is worse when she's sitting or standing for any length of time.  Her job revolves around her standing all day and certainly I'm not sure that she could be functioning in that type of position." He concludes that "[Plaintiff] is to stay out of work . . . . She is unable to work at this point . . . . I'm not sure that she is employable at this point." (Tr. at 109). A NYS Disability Determinations form completed by Dr. Agostinelli on September 19, 2002 states that Plaintiff's motor strength, sensory examination and deep tendon reflexes were normal although she walked with a

waddling gait. (Tr. at 101-03).   In addition, Plaintiff had a limited ability to lift and carry, stand and/or walk, sit, and push and/or pull. (Tr. at 104 -05).

Unsigned notes from the Northgate Medical Group dated November 24, 2003, February 24, 2004, and May 28, 2004 indicate back pain, inability to stand for any length of time, difficulty in lying down flat, tenderness over the LS spine area, diminished reflexes, a total inability to work, and an impression of severe "DJD LS strain" and tendonitis in the left ankle. (Tr. at 153-55).

A letter from Dr. Agostinelli to Plaintiff's counsel, dated January 27, 2005, states that Plaintiff "has presented with continued problems with back pain and yet her MRI scans, etc. show no physical corroboration of the problem." (Tr. at 165). Dr. Agostinelli goes on to say that Plaintiff "continues to have normal neurological examination at this time yet. . . continues to be very symptomatic and really unable to function." (Tr. at 165).

A May 22, 2000 referral to neurosurgeon Bipin C. Shah found that Plaintiff was able to ambulate well and to walk on toes and heels, strength was normal, and presented mild tenderness over the lumbar spine but with no muscle spasms. (Tr. at 86). Review of Plaintiff's MRI of the lumbar spine showed no evidence of disc herniation but mild degenerative disc disease at the L5-S1 level. (Tr. at 86).

A second neurosurgeon, Dr. Paul K. Maurer, examined Plaintiff on October 3, 2000.  Dr. Maurer noted that Plaintiff had an unremarkable hip range of motion, the ability to "heel-to-toe-walk" in a well balanced manner, identified no focal motor paresis, no sensory loss and normal deep tendon reflexes. (Tr. at 87-88). Review of Plaintiff's MRI showed mild degenerative changes at L5-S1. (Tr. at 88).

Plaintiff received chiropractic treatment from Donald R. Dudley, D.C. on April 19, 2000. (Tr. at 91). The diagnosis was lumbar disc syndrome with segmental dysfunction. (Tr. at 92). Dr. Dudley expected Plaintiff's symptomatology to remit at least 50% after a two week period of treatment. (Tr. at 92). On March 13, 2001, Dr. Dudley stated that Plaintiff had an immediate response to treatment and would do well with only two or three sessions. (Tr. at 89).

Dr. Michael S. Silber of the Ide Group reported on the findings of a MRI scan on May 10, 2002. (Tr. at 98). His impression was of minimal disc bulging at L5-S1 with minimal flattening of the central aspect of the thecal sac. (Tr. at 98). He went on to find no evidence of central canal stenosis, and widely patent neural foramina. (Tr. at 98).

Dr. Agostinelli referred Plaintiff to Dr. Capicotto of Greater Rochester Orthopaedics who examined Plaintiff on May 3, 2002. (Tr. at 96).  Dr. Capicotto found Plaintiff was obese with an

antalgic gait who was able to heel and toe walk but able to flex only until fingers came to the knee level. (Tr. at 96). Plaintiff has to support herself when bending over and arises with severe dysrhythmia. (Tr. at 96) The back examination showed that Plaintiff was very tender at L5-S1 with no sciatic list, no scoliosis, no spasms, no midline defect. (Tr. at 96). Plaintiff's hips demonstrated a full range of motion. (Tr. at 96). At a second visit on May 29, 2002, Dr. Capicotto could not detect any overt weakness although he did find giving way weakness of the EHL (extensor hallucis longus) and anterior "tib." (Tr. at 95). His review of a recent MRI found mild degeneration at the L5-S1 segment. (Tr. at 95). Dr. Capicotto's impression is of "low back pain, idiopathic, possibly secondary to degenerative disease." (Tr. at 95).

Plaintiff saw Dr. Iannoli on April 29 and May 17, 2002 to have an evaluation for gastric bypass surgery. (Tr. at 110). Dr. Iannoli found Plaintiff obese and did not recommend surgery to control her lumbo-sacral symptoms because "there is absolutely no guarantee that weight loss will decrease her disabling symptoms." (Tr. at 111-13). In a NYS Disability Determination form completed by Dr. Iannoli on September 26, 2002, he stated a diagnosis of morbid obesity and put no restrictions on Plaintiff's ability to lift and carry, stand and/or walk, sit, and push and/or pull. (Tr. at 118-22).

Plaintiff was also treated for pain by Dr. Grammar on April 8 and 20, 2002. (Tr. at 115-16). In addition, at a consultative examination on October 3, 2002, Dr. Peter Haritatos found a full range of motion in Plaintiff's cervical spine and a limited range of motion in her lumbar spine.  Straight leg raising and sitting up were painful. (Tr. at 125, 129).  Range of motion in hips showed some abnormality. (Tr. at 129).  Range of motion in knees and ankles was normal although painful. (Tr. at 129).  Muscle strength in the upper extremities was normal and below normal in the lower extremities due to low back pain. (Tr. at 129).  Left ankle was swollen and lumbar spine was markedly tender.  (Tr. at 129). Plaintiff was moderately restricted from doing heavy lifting, prolonged walking, standing, or sitting both as a combination from her back and her left ankle. (Tr. at 130). Lumbar x-rays on the same date did not show evidence of extensive arthritic changes and indicated only mild narrowing with moderate sized osteophytes at T12-L1 level and small osteophytes at T10-11 and T11-T12 levels, and mild scoliosis. (Tr. at 131).

According to the records of Dr. Gregory Finkbeiner, Plaintiff underwent an osteotomy with tendon transfer (ankle surgery) on June 3, 2003. (Tr. at 148).  By September 10, 2003, Plaintiff was up to 100% weight bearing and by March 3, 2004 was wearing a regular shoe with an orthotic. (Tr. at 139, 142) On June 2, 2004, mild swelling, tenderness, and weakness was noted in the tendon

transfer. (Tr. at 138). None of the treating physicians discussed the effect that Plaintiff's obesity has on her ability to perform gainful employment.

A summary of the clinical and medical evidence, including a lumbar MRI finding in 2000, showed only mild degenerative changes at the L5-S1 level with no evidence of disc herniation, as noted by neurosurgeons Dr. Shah and Dr. Maurer. (Tr. at 86-88). After examination of Plaintiff, both neurosurgeons found no focal motor deficits. (Tr. at 86-88). A lumbar MRI in 2002 showed minimal disc bulging at L5-S1 with minimal flattening of the thecal sac and no evidence of narrowing of the central canal or neural foramina. (Tr. at 98). Lumbar x-rays on October 3, 2002 showed no extensive arthritic changes, only mild narrowing with moderate sized osteophytes at the T12-L1 level and small osteophytes at the T10-T11 and T11-T12 levels, and mild scoliosis. (Tr. at 131). Dr. Iannoli made a diagnosis of morbid obesity with no limitations on Plaintiff's ability to do work related physical activities. (Tr. at 118-22).

After a consultative examination on October 3, 2002, Dr. Haritatos stated that Plaintiff is moderately restricted from heavy lifting, prolonged walking, standing or sitting because of back and ankle impairments. (Tr. at 125-30). Finally, on November 2, 2002, the DDS physician, Dr. de Freitas, found that Plaintiff retained the physical residual functional capacity to

occasionally lift and/or carry 20 lbs., frequently lift and/or carry 10 lbs., stand and/or walk at least six hours in an eight hour workday, sit at least six hours in an eight hour workday, with no limitations on her ability to push and/or pull other than as shown for lift and/or carry. (Tr. at 133).

I find substantial evidence in the medical record to support the ALJ's finding that since the alleged onset date of disability, Plaintiff has been able to perform light work with the ability to occasionally lift and/or carry 20 pounds, frequently lift and/or carry 10 pounds, stand and/or walk (with normal breaks) for 6 hours in an 8 hour work day, sit (with normal breaks) for 6 hours in an 8 hour work day, and has no push/pull limitations other than those shown for  lift and/or carry.  (Tr. at 30).  Although the failure of the ALJ to address the factors for not following the "treating physician's rule," a review of the record reveals substantial evidence supporting the ALJ's decision for not giving controlling weight to the opinion of the treating physician.  "When other substantial evidence in the record conflicts with the treating physician's opinion, that opinion will not be deemed controlling and the less consistent the opinion is with the record as a whole, the less weight it will be given."  Snell v. Apfel, 177 F.3d 128, 133 (2nd Cir. 1999).

B.   The ALJ properly found Plaintiff's statements not fully
credible.

In determining disability, all of Plaintiff's symptoms, including pain, must be considered, as well as the extent to which her symptoms can reasonably be accepted as consistent with objective medical evidence and other evidence. 20 C.F.R. 404.1529(a). The intensity and persistence of symptoms, such as pain, must be evaluated to determine the extent that the symptoms limit Plaintiff's capacity for work. 20 C.F.R. 404.1529(c). Conflicts between Plaintiff's statements and the rest of the evidence are also to be considered. 20 C.F.R. 404.1529(c)(4).

Plaintiff reported that she cannot sit, stand, bend, or move without constant pain. (Tr. at 52). The medical record does not support the alleged severity of Plaintiff's limitations. Plaintiff stated that she drives short distances, socializes with friends at her home, attends church one time per month, goes outside daily, shops weekly, and does laundry with assistance. (Tr. at 74,75, 170-71). Plaintiff stated that her medication makes her sleepy and that she reads one book per week. (Tr. at 75, 80).

I agree with the ALJ's findings that Plaintiff's statements are not fully credible in that she alleges a level of disabling symptoms that exceeds what the objective evidence and clinical findings could produce. (Tr. at 10, 29).  The ALJ appropriately exercised discretion to determine that plaintiff's statements about

her functional limitations were not entirely credible.  <u>See</u> <u>Minns</u>

<u>v. Heckler</u>, 750 F.2d 180, 186 (2d Cir. 1984).

### **Conclusion**

For the reasons set forth above, I conclude that the ALJ's

decision is supported by substantial evidence in the record and,

therefore, the Commissioner's cross-motion for judgment on the

pleadings is granted. Plaintiff's motion for judgment on the

pleadings is denied, and Plaintiff's complaint is dismissed with

prejudice.

ALL OF THE ABOVE IS SO ORDERED.

                     s/Michael A. Telesca
                   MICHAEL A. TELESCA
                 United States District Judge
Dated: Rochester, New York
       January 28, 2008